UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL JASON KNIGHT,

      Plaintiff,

v.

                                     Case No. 3:23-cv-123-MMH-JBT

RICKY D. DIXON, Secretary, Florida
Department of Corrections, et al.,

      Defendants.

_____

## ORDER

### I. Status

Plaintiff Michael Jason Knight, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on January 30, 2023, by filing a pro se Complaint for Violation of Civil Rights (Complaint; Doc. 1)[1] pursuant to 42 U.S.C. § 1983. In the Complaint, she names as Defendants: (1) the FDOC; (2) Dr. Danny Martinez, Chief of Medical Services; (3) Tom Reimers, Health Services Director; (4) Captain C. Camacho; (5) Dr. Suzonne Kline, Chief of Mental Health Services; (6) Centurion; and (7) Warden Randall Polk. Complaint at 3–5; see also Docs. 12–14, 16. Knight asserts that

_____

[1] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

Defendants have failed to provide for her needs as a transgender inmate in violation of the Eighth and Fourteenth Amendments, as well as the Americans with Disabilities Act. See id. at 6–14. Knight requests monetary relief. Id. at 15.

This matter is before the Court on Centurion's Motion to Dismiss (Centurion Motion; Doc. 19) and the FDOC, Polk, Camacho, Kline, Martinez, and Reimers' (collectively FDOC Defendants) Motion to Dismiss (FDOC Motion; Doc. 25). The FDOC Defendants also submitted exhibits in support of the FDOC Motion. See Docs. 25-1 through 25-8. Knight filed a response in opposition to the FDOC Motion (Response; Doc. 39). She failed to respond to Centurion's Motion. Therefore, Defendants' Motions are ripe for review.[2]

---

[2] Centurion filed its Motion on May 19, 2023, see Centurion Motion, and the FDOC Defendants filed their Motion on August 11, 2023, see FDOC Motion. After granting Knight multiple extensions of time to respond, see Docs. 27, 33, 36, the Court ordered Knight to file responses to the Motions by February 16, 2024, and cautioned "[i]f Plaintiff fails to file responses by the deadline, the Court will consider Defendants' Motions to be ripe, and no further briefing will be allowed," Doc. 38 at 1.

## II. Plaintiff's Allegations[3]

Knight, an inmate at Columbia Correctional Institution (Columbia CI) at the time she filed the Complaint,[4] alleges the FDOC failed to properly classify her as a transgender female and send her to a "transgender institution." Complaint at 12. According to Knight, she notified Classification Officer W. Tabb at the Central Florida Reception Center of her status; but the FDOC transferred her to Columbia CI. Id. She maintains that Columbia CI fails to provide female undergarments and "hair passes" to transgender female inmates. Id. at 11. Knight asserts that although she received a "transgender shower pass," she is housed in an open bay dormitory with community showers. Id. at 11, 13. Warden Polk allegedly has failed "to oversee the conduct of lower staff by not provid[]ing rules for staff to address trans females with proper pronouns . . . [and] not enforc[]ing P.R.E.A.[5] laws for housing/showers." Id. at 13. Knight alleges that Captain Camacho forced her to shave her head even

---

[3] In considering the Motions, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Knight, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

[4] As of the date of this Order, Knight is housed at Wakulla Correctional Institution. See Offender Search, Florida Department of Corrections, (last visited February 23, 2024).

[5] Prison Rape Elimination Act. See 34 U.S.C. §§ 30301–30309.

though Knight informed Captain Camacho that she is a transgender female and is "allowed to grow hair to stop [her] gender dysphoria. . . ." Id. Knight further contends that Centurion has denied her hormone replacement therapy, female undergarments, hair passes, and an "evaluation for [her] to transfer to a transgender institution. . . ." Id. at 12. She asserts that the alleged constitutional violations began on October 30, 2022, and remain ongoing. Id. at 10.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic

4

Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held

5

to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quoting GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

## IV. Summary of the Arguments

In its Motion, Centurion argues that Knight's claim against it should be dismissed because she failed to: state a claim upon which relief can be granted, properly exhaust her administrative remedies, and comply with the pre-suit notice and screening requirements of Florida Statutes Chapter 766. See Centurion Motion at 3–14. In their Motion, the FDOC Defendants request that the Court dismiss Knight's claims against them because: she failed to properly exhaust administrative remedies; Knight fails to state a claim upon which relief can be granted; they are entitled to Eleventh Amendment immunity to the extent Knight seeks monetary damages against them in their official

6

capacities; and Knight is not entitled to monetary relief. See FDOC Motion at 6–43.

In response to the FDOC Motion, Knight argues that she properly exhausted administrative remedies, states a claim upon which relief can be granted, and is entitled to compensatory damages. See Response at 2–7. Knight seemingly concedes that she is not entitled to punitive damages and that the FDOC Defendants are entitled to Eleventh Amendment immunity as to her request for monetary damages against them in their official capacities. See id. at 5, 7.

## V. Analysis

### A. Centurion Motion

#### 1. Eighth Amendment Deliberate Indifference

Centurion asks the Court to dismiss Knight's claim against it because she fails to identify a custom or policy of Centurion that constituted deliberate indifference or caused a federal constitutional violation. See Centurion Motion at 3–8. Pursuant to the Eighth Amendment of the United States Constitution, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane

7

conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct. Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing Farmer, 511 U.S. at 834); Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004).

As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). To prevail on a deliberate indifference claim, a plaintiff must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009).

> "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and subjective inquiry." Farrow v. West, 320 F.3d 1235,

8

1243 (11th Cir. 2003). To meet the first prong, the plaintiff must demonstrate an "objectively serious medical need"—i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," and, in either instance, "one that, if left unattended, poses a substantial risk of serious harm." Id. (alteration adopted) (quotations omitted). To satisfy the second, subjective prong, the plaintiff must prove that the prison officials "acted with deliberate indifference to [his serious medical] need." Harper v. Lawrence Cnty., 592 F.3d 1227, 1234 (11th Cir. 2010) (quotation omitted). "To establish deliberate indifference," a plaintiff must demonstrate that the prison officials "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." Id. (quotation omitted).[6] An inmate-plaintiff bears the burden to establish both prongs. Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007).

Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 (11th Cir. 2020) (footnote omitted). Importantly, for allegedly inadequate medical treatment to rise to the level of a constitutional violation, the care must be "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be

---

[6] The Eleventh Circuit has recognized "a tension within [its] precedent regarding the minimum standard for culpability under the deliberate-indifference standard." Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 n.2 (11th Cir. 2020). Regardless, the court stated that the "competing articulations–'gross' vs. 'mere' negligence"–may be "a distinction without a difference" because "no matter how serious the negligence, conduct that can't fairly be characterized as reckless won't meet the Supreme Court's standard." Id.; see also Patel v. Lanier Cnty., 969 F.3d 1173, 1188 n.10 (11th Cir. 2020).

intolerable to fundamental fairness.'" <u>Hoffer</u>, 973 F.3d at 1271 (quoting <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991)); <u>see also</u> <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1033 (11th Cir. 1989) ("Grossly incompetent or inadequate care can constitute deliberate indifference . . . as can a doctor's decision to take an easier and less efficacious course of treatment" (internal citation omitted) or fail to respond to a known medical problem).

"As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar." <u>Swain</u>, 961 F.3d at 1285. Indeed, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. <u>Daniels v. Williams</u>, 474 U.S. 327, 330–31 (1986); <u>Davidson v. Cannon</u>, 474 U.S. 344, 348 (1986) ("As we held in <u>Daniels</u>, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). A complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotations and citation omitted). Moreover, the Eleventh Circuit has noted that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment

10

to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." Bismark v. Fisher, 213 F. App'x 892, 897 (11th Cir. 2007) [7] (quoting Waldrop, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

The FDOC contracted with Centurion to provide medical services to inmates within the State of Florida. Although Centurion is not a governmental entity, "[w]here a function which is traditionally the exclusive prerogative of the state . . . is performed by a private entity, state action is present" for purposes of § 1983. Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985). Indeed,

> "[w]hen a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of

---

[7] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

> the municipality" under section 1983. <u>Buckner v. Toro</u>,
> 116 F.3d 450, 452 (11th Cir. 1997). "[L]iability under §
> 1983 may not be based on the doctrine of respondeat
> superior." <u>Grech v. Clayton Cnty., Ga.</u>, 335 F.3d 1326,
> 1329 (11th Cir. 2003) (en banc).

<u>Craig v. Floyd Cnty.</u>, 643 F.3d 1306, 1310 (11th Cir. 2011); <u>see</u> <u>Denham v.</u>

<u>Corizon Health, Inc.</u>, Case No. 6:13-cv-1425-Orl-40KRS, 2015 WL 3509294, at

*3 n.1 (M.D. Fla. June 4, 2015)[8] ("[W]hen a government function is performed

by a private entity like Corizon, the private entity is treated as the functional

equivalent of the government for which it works.") (citation omitted), <u>aff'd</u> 675

F. App'x 935 (11th Cir. 2017).

    Where a deliberate indifference claim is brought against an entity, such

as Centurion, based upon its functional equivalence to a government entity,

the assertion of a constitutional violation is merely the first hurdle in a

plaintiff's case. This is so because liability for constitutional deprivations under

§ 1983 cannot be based on the theory of respondeat superior. <u>Craig</u>, 643 F.3d

at 1310 (quoting <u>Grech</u>, 335 F.3d at 1329); <u>see</u> <u>Denno v. Sch. Bd. Of Volusia</u>

<u>Cnty.</u>, 218 F.3d 1267, 1276 (11th Cir. 2000). Instead, a government entity may

---

[8] The Court notes that although decisions of other district courts are not binding, they too may be cited as persuasive authority. <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

be liable in a § 1983 action "only where the [government entity] <u>itself</u> causes the constitutional violation at issue." <u>Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cnty.</u>, 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the government entity was the "moving force" behind the alleged constitutional deprivation. <u>See</u> <u>Monell v. Dep't of Soc. Servs. of N.Y.</u>, 436 U.S. 658, 693–94 (1978).

In <u>Monell</u>, the Supreme Court held that local governments can be held liable for constitutional torts caused by official policies. However, such liability is limited to "acts which the [government entity] has officially sanctioned or ordered." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986). Under the directives of <u>Monell</u>, a plaintiff also must allege that the constitutional deprivation was the result of "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." <u>Denno</u>, 218 F.3d at 1276; <u>see</u> <u>Hoefling v. City of Miami</u>, 811 F.3d 1271, 1279 (11th Cir. 2016) (stating <u>Monell</u> "is meant to limit § 1983 liability to 'acts which the municipality has officially sanctioned or ordered'"; adding that "[t]here are, however, several different ways of establishing municipal liability under § 1983").

"A policy is a decision that is officially adopted by the [government entity] or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the [government entity] from acts of employees of the [government entity], and thereby make clear that [governmental] liability is limited to action for which the [government entity] is actually responsible.'" Grech, 335 F.3d at 1329 n.5 (quotation and citation omitted). Indeed, governmental liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives'" by governmental policymakers. City of Canton v. Harris, 489 U.S. 378, 389 (1989) (quoting Pembaur, 475 U.S. at 483–84). A government entity rarely will have an officially-adopted policy that permits a particular constitutional violation, therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the government entity has a custom or practice of permitting the violation. See Grech, 335 F.3d at 1330; McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Bd. Of Cnty. Comm'rs of Bryan Cnty.

14

v. Brown, 520 U.S. 397, 404 (1997). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law," see Sewell, 117 F.3d at 489, or a "persistent and wide-spread practice" of which the entity is aware, see Denno, 218 F.3d at 1277. Last, "[t]o hold the [government entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1271 (11th Cir. 2005) (quoting Canton, 489 U.S. at 385). Because Centurion's liability under § 1983 would be based on its functional equivalence to the government entity responsible for providing medical care and services to inmates, Knight must plead that an official policy or a custom or practice of Centurion was the moving force behind the alleged federal constitutional violation.

Here, Knight neither sufficiently identifies an official Centurion policy that constitutes deliberate indifference nor an unofficial Centurion custom or practice that acted as a moving force behind the alleged constitutional violation. In the Complaint, Knight asserts that Centurion denied her hormone replacement therapy, hair passes, and female undergarments. Complaint at 12. She further contends that Centurion has failed to "put in an evaluation for [her] to transfer to a transgender institution." Id. However, these assertions

appear to relate only to the alleged denial of treatment and accommodations for herself, and "[a] single incident of a constitutional violation is insufficient to prove a policy or custom . . . ." <u>Craig</u>, 643 F.3d at 1311. Moreover, Knight alleges no facts to plausibly suggest that Centurion, a medical services provider, would be responsible for administering clothing items and hair passes to inmates. As such, her allegation that Centurion had a policy or custom of denying those items is conclusory and speculative. Knight does not plead facts sufficient to nudge her claim of deliberate indifference "across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570. Therefore, the Court concludes that Knight has failed to state a claim for relief against Centurion, and Centurion's Motion is due to be granted on this basis.

## 2. <u>Sua</u> <u>Sponte</u> Frivolity Review

In the Complaint, Knight appears to also raise Americans with Disabilities Act (ADA), equal protection, due process, and deprivation of privacy claims against Centurion. <u>See</u> Complaint at 8. Centurion  fails to address these claims in its Motion. <u>See generally</u> Centurion Motion. Nevertheless, the Prison Litigation Reform Act requires the Court to dismiss a case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks

16

monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). A civil rights complaint must include a short and plain statement of the claim showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). While not required to include detailed factual allegations, a complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). To avoid dismissal for failure to state a claim on which relief can be granted, a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679.  Notably, a "shotgun pleading" is a complaint that fails to comply with Rule 8(a)(2) because it contains numerous causes of action adopting the factual allegations of all proceeding counts; is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; does not separate causes of action into separate counts; or asserts multiple claims against multiple defendants while failing to

17

specify which defendants are responsible for which acts or omissions. <u>Weiland v. Palm Beach Cnty. Sheriff's Office</u>, 792 F.3d 1313, 1320 (11th Cir. 2015).

Here, in her Complaint, Knight fails to comply with Rule 8(a)(2) because she does not "identify [her] claims with sufficient clarity. . . ." <u>Beckwith v. Bellsouth Telecomms. Inc.</u>, 146 F. App'x 368, 371 (11th Cir. 2005). Although Knight alleges Centurion refused to provide her with proper undergarments and hormone replacement therapy, she fails to connect these facts with a particular cause of action or constitutional violation. And, in failing to do so, she does not provide sufficient notice to Centurion of the claims against it. Accordingly, to the extent Knight raises ADA, equal protection, due process, and deprivation of privacy claims against Centurion, they are due to be dismissed.

### B. FDOC Motion

### 1. PLRA Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1286 (11th Cir. 2004); <u>see also</u> <u>Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't</u>, 476 F. App'x 364, 366 (11th Cir. 2012) (noting that exhaustion is "a

'threshold matter' that we address before considering the merits of the case")
(citation omitted). It is well settled that the Prison Litigation Reform Act
(PLRA) requires an inmate wishing to challenge prison conditions to first
exhaust all available administrative remedies before asserting any claim
under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S.
516, 524 (2002). A prisoner such as Knight, however, is not required to plead
exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United
States Supreme Court has recognized that "failure to exhaust is an affirmative
defense under the PLRA[.]" Id. Notably, exhaustion of available administrative
remedies is "a precondition to an adjudication on the merits" and is mandatory
under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not
only is there an exhaustion requirement, the PLRA "requires proper
exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal
> with parties who do not want to exhaust,
> administrative law creates an incentive for these
> parties to do what they would otherwise prefer not to
> do, namely, to give the agency a fair and full
> opportunity to adjudicate their claims. Administrative
> law does this by requiring proper exhaustion of
> administrative remedies, which "means using all steps
> that the agency holds out, and doing so properly (so
> that the agency addresses the issues on the merits)."

Pozo,[9] 286 F.3d, at 1024 (emphasis in original).

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id.

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322–23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, the FDOC Defendants bear "the burden of proving that [Knight] has failed to exhaust [her] available administrative remedies." Id. at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

---

[9] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

At step two of the procedure established in Turner, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record. Bryant, 530 F.3d at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838–39 (11th Cir. 2020). Here, the FDOC Defendants submitted declarations and grievance records as exhibits to their Motion. See Docs. 25-1 through 25-8. When neither party requests an evidentiary hearing, courts may decide a motion to dismiss on the basis of affidavits and other documents. Bryant, 530 F.3d at 1377 n.16. Here,

21

the parties do not request an evidentiary hearing. Thus, the Court considers the grievance records solely for purposes of addressing the issue of exhaustion. In evaluating whether Knight has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010).

## 2. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is

not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." See Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. See Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. See Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-

103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See Fla. Admin. Code R. 33-103.014(1)(a)–(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. See Fla. Admin. Code R. 33-103.014(1).

### 3. Knight's Exhaustion Efforts

With their Motion, the FDOC Defendants provide records of Knight's exhaustion efforts. See Doc. 25-1 through 25-8. On December 15, 2022, Knight submitted an informal grievance at Columbia CI, stating:

> I am a transgender female who is in the middle of my
> transition. This institution is failing to meet my needs

24

> as a transgender inmate. All this institution provides is a "general shower pass' witch [sic] is not working the way it su[p]pose[d] to. I eosed [sic] from Dade C.I. in 2020, witch [sic] is a transgender camp. I was approved by the "gender dysphoria review team" for social transi[]tion where I was provided female clothes, female hygeine [sic]. Al[]so hair pass for female hair styles. Al[]so I am being housed in open bay witch [sic] is a problem all by it self. It seems that I am at a transphobic institution. <u>I need to be at a transgender institution.</u>

Doc. 25-1 at 1 (emphasis added). On December 19, 2022, Columbia CI returned the informal grievance without action:

> Your request for Administrative Remedy or Appeal has been received, reviewed & evaluated.
>
> Further investigation reveals the following information:
>
> In accordance with Chapter 33-103.014 Reasons for Return of Grievance or Appeal without Processing (1)(v): the inmate is using the grievance process to ask questions or seek information, guidance or assistance.
>
> Therefore, based on the foregoing information; your grievance is returned without action.

<u>Id.</u> at 2. Knight subsequently filed a formal grievance on December 22, 2022.

<u>See</u> Doc. 25-2 at 1. Columbia CI returned the formal grievance without action on January 4, 2023, determining:

> Your request for Administrative Remedy or Appeal has been received, reviewed & evaluated.

> Your request for administrative remedy is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103.014(g)[.] The grievance did not have the attachments required: informal grievance and response, except as allowed for in paragraphs 33-103.006(3)(a) through (h), F.A.C., or the formal grievance and response, except as provided for in subsection 33-103.007(6), F.A.C., as the attached informal grievance was returned without action
>
> Upon receipt of this response, if you are within the allowable time frames for processing a grievance, you may submit your informal grievance, in compliance with Chapter 33-103, Inmate Grievance Procedure.
>
> Based on the foregoing information, your grievance is returned without action.

Id. at 2. Knight submitted an appeal on January 13, 2023, see Doc. 25-3 at 1, and the Secretary returned the appeal without action for its "non-compliance with Chapter 33-103, Inmate Grievance Procedure, because [Knight's] grievance at the institutional level was determined to be in non-compliance with the requirements of the rule," id. at 2.

The FDOC Defendants also submitted the declaration of Columbia CI Assistant Warden Christina Crews. See Doc. 25-4. Crews avers that between October 30, 2022, and January 30, 2023, Knight had no approved informal grievances regarding the allegations described in the Complaint. Id. at 1. However, she filed "one denied informal and one returned informal regarding

the allegations described in [her] complaint." Id. She also "filed one formal grievance, which was related to [her] returned informal grievance. This formal was returned as well." Id. at 2. A log of informal and formal grievances that Knight submitted during the above-mentioned period confirms Crews' assertions. See Docs. 25-5 through 25-6. It also reflects that Columbia CI received the denied informal grievance on January 24, 2023. See Doc. 25-5.

Lawanda Sanders-Williams, an FDOC operation analyst, also provided a declaration. See Doc. 25-7. According to Sanders-Williams, between October 30, 2022, and January 30, 2023, Knight "had no denied or approved appeals of any kind regarding the allegations raised in [her] complaint. The approved appeal on record is about issues from the Central Florida Reception Center and not at issue in the complaint." Id. The FDOC Defendants submitted a log of Knight's grievance appeals that the Secretary received between October 30, 2022, and January 30, 2022. See Doc. 25-8.

### 4. <u>Turner</u> Step One

Under the first step of the <u>Turner</u> analysis, the Court must review the allegations in the Motion and Response and accept as true Knight's allegations. See <u>Whatley</u>, 802 F.3d at 1209. If Knight's allegations in the Response show a failure to exhaust, then dismissal will be appropriate. See <u>id.</u> The FDOC

Defendants contend that although Knight filed an informal grievance, formal grievance, and grievance appeal, she did not properly exhaust administrative remedies because she failed to comply with the FDOC's grievance procedure. See FDOC Motion at 16–17. Knight responds that she properly exhausted her administrative remedies because Columbia CI erroneously returned her informal grievance without action. Response at 2. Moreover, she alleges that, after she filed the Complaint, the Secretary amended the response to her grievance appeal and directed Columbia CI to reevaluate her formal grievance. Id. at 3. According to Knight, Columbia CI denied her formal grievance. Id. Knight further contends that she did not have available administrative remedies. Id. at 4. Accepting Knight's view of the facts as true, the Court cannot dismiss her claims at the first step of the Turner analysis and will proceed to step two.

### 5. Turner Step Two

At the second prong of the Turner analysis, the Court finds Knight had available administrative remedies that she failed to properly exhaust before filing the Complaint. Knight submitted an informal grievance, formal grievance, and grievance appeal, all of which prison officials returned without action for failure to comply with the institution's procedural requirements. See

Docs. 25-1 through 25-3. Although Knight argues that Columbia CI erred when it returned her informal grievance without action, "'[c]ourts must give deference to prison officials regarding the interpretation and application of their own grievance procedures so long as the procedures provide inmates with a meaningful opportunity to present grievances,' and provided that the application of the grievance rules was not 'clearly erroneous, arbitrary or intended to prevent plaintiff from exercising his right of access to the courts.'" Stephens v. Corizon, LLC, No. 3:20-cv-70-BJD-PDB, 2021 WL 2981317, at *8 (M.D. Fla. July 14, 2021)  (quoting Jones v. Frank, No. 07-cv-141-BBC, 2008 WL 4190322, at *3 (W.D. Wis. Apr. 14, 2008)); see also White v. Moore, 789 So. 2d 1118, 1120 (Fla. 1st DCA) (2001) (noting that courts defer to an agency's interpretation of a rule that it administers). Here, Columbia CI determined that Knight used her informal grievance to ask questions or seek information, guidance, or assistance in violation of Rule 33-103.014(1)(v). See Doc. 25-1 at 2. Notably, Knight admits that, in her informal grievance, she sought transfer to another corrections facility that could accommodate transgender inmates. See Response at 2–3 ("Rather, Plaintiff lists the specific accommodations she is entitled to and seeks as remedy a transfer to another facility where they are available."). In this case, the FDOC's interpretation of its rule was not clearly

erroneous, arbitrary, or intended to prevent Knight from exercising her right of access to the courts. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90. As such, Knight did not properly exhaust her administrative remedies where her grievances failed to comply with FDOC procedural requirements.

Nevertheless, Knight asserts that the Secretary amended the response to her grievance appeal, and her formal grievance was subsequently denied. See Response at 3–4. The Court acknowledges that a discrepancy appears to exist between Knight's grievance appeal and response (log# 23-6-01985) and the log of Knight's grievance appeals. The former reflects that the Secretary returned Knight's grievance appeal without action. See Doc. 25-3. The latter shows that the Secretary approved log# 23-6-01985. See Doc. 25-8 at 1. However, in her declaration, Sanders-Williams avers that Knight "had no denied or approved appeals of any kind regarding the allegations raised in [her] complaint," Doc. 25-7 at 1, and the formal grievance log does not show Columbia CI denied Knight's formal grievance, see Doc. 25-6. Considering the totality of the evidence, the Court concludes the grievance appeals log contains a scrivener's error, and the relevant grievance appeal (log# 23-6-01985) was returned without action.

Even assuming _arguendo_ the Secretary amended its response to Knight's grievance appeal and Columbia CI denied her formal grievance, Knight still did not exhaust her administrative remedies before filing suit. The FDOC grievance procedure provides that Knight could have appealed the amended response to her formal grievance. See Fla. Admin. Code R. 33-103.007(8) ("If the grievance or appeal is returned to the institution or facility for further investigation or response, the inmate may, following receipt of that response, re-file with the Office of the Secretary . . . if he is not satisfied with the response."); see also Brown v. Burdett, No. 3:22CV9071-TKW-HTC, 2022 WL 17969097, at *4 (N.D. Fla. Dec. 9, 2022) (finding plaintiff did not exhaust his administrative remedies where the Secretary approved his appeal for further inquiry and referred the formal grievance back to the Warden but plaintiff failed to appeal the Warden's amended response denying his formal grievance), report and recommendation adopted, No. 3:22CV9071-TKW-HTC, 2022 WL 17968836 (N.D. Fla. Dec. 27, 2022); Moore v. Dalvery, No. 5:23-CV-98-TKW-MJF, 2023 WL 8703758, at *4 (N.D. Fla. Nov. 21, 2023) (same), report and recommendation adopted, No. 5:23CV98-TKW-MJF, 2023 WL 8701316 (N.D. Fla. Dec. 15, 2023). Knight does not allege she pursued an appeal of the amended response.

Knight also seemingly argues that she did not have available administrative remedies because the grievance process operates as a "dead end" with prison officials consistently returning grievances without action. Response at 4. However, Knight points to no facts suggesting that any of her grievances which prison officials returned had merit or were improperly returned. Notably, Knight filed six informal grievances between October 30, 2022, and January 30, 2023, and she received merits responses to four of those grievances. See Doc. 25-5. As such, the Court finds Knight's argument to be without merit.

In addition, Knight alleges that "the confusing and contradictory instruction found in Defendant Crews' original response to formal #2212-201-129" also rendered her administrative remedies unavailable. Response at 4. Columbia CI returned Knight's formal grievance because she did not include the requisite attachments. See Doc. 25-2 at 2. Rules 33-103.005(2)(b)1 and 33-103.006(2)(g) state that informal grievances asking questions or seeking information, guidance, or assistance shall not be accepted as documentation of completion of the informal grievance step. As such, Knight did not provide a sufficient attachment to her formal grievance because her informal grievance was returned without action for the above reason. In the formal grievance

32

response, Columbia CI stated that Knight could submit an informal grievance that complied with procedural requirements if she was in the allowable time frame. The instructions are not confusing or contradictory such that Knight did not have available administrative remedies. Based on the above, the Court finds Knight failed to properly exhaust her administrative remedies, and the FDOC Defendants' Motion is due to be granted on that basis.[10]

Accordingly, it is now

**ORDERED:**

1.     Defendant Centurion's Motion to Dismiss (Doc. 19) and the FDOC Defendants' Motion to Dismiss (Doc. 25) are **GRANTED** to the extent provided in the Order.

2.     Plaintiff Michael Jason Knight's Complaint (Doc. 1) is **DISMISSED without prejudice**.

---

[10] The Court will not address the FDOC Defendants' remaining arguments because their Motion is due to be granted for Knight's failure to exhaust her administrative remedies.

3.     The **Clerk** shall enter judgment dismissing the case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of March, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 2/23
c:     Michael Jason Knight, #H02422
       Counsel of record

34